IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

JOHN VICKERS,

    Plaintiff,

v.

CITY OF MOULTRIE, GEORGIA, AND MOULTRIE POLICE DEPARTMENT,

    Defendants.

Civil Action No. 7:13-CV-29 (HL)

ORDER

Before the Court is the Motion for Summary Judgment (Doc. 15) filed by Defendants City of Moultrie, Georgia ("City of Moultrie") and the Moultrie Police Department ("MPD" or "the Department") (collectively "Defendants"). For the following reasons, the motion is granted.

I. **Summary Judgment Standard**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and … the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court must evaluate all of the evidence, together with any logical inferences, in the light most favorable to the nonmoving party. Id. at 254-55. The court may not, however, make credibility determinations or weigh the evidence. Id. at 255; *see also* Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of a material fact." Celotex, 477 U.S. at 323 (internal quotation omitted). If the movant meets this burden, the burden shifts to the party opposing summary judgment to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the movant is not entitled to judgment as a matter of law. Id. at 324-26. This evidence must consist of more than conclusory allegations. *See* Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

Under Local Rule 56, the facts listed in the movant's statement of material facts will be deemed admitted as undisputed unless the non-movant denies each specific fact and provides a supporting citation to the factual record. M.D. Ga. L.R. 56. However, even if the non-movant fails to offer adequate objections under Local Rule 56, a court may not accept at face value the movant's depiction of the facts. United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla., 363 F.3d 1099, 1101-02 (11th Cir. 2004). A court must review the record to determine for itself whether the motion for summary judgment is supported by the evidence and that there is no genuine issue of material fact. Id.; *see also* Reese v. Herbert, 527 F.3d 1253, 1268-69 (11th Cir. 2008).

**II.     Factual Summary**

Although Plaintiff John Vickers ("Plaintiff") has filed a statement of facts in support of his response to Defendants' motion for summary judgment, he has not provided specific record citations to contest each fact listed in their statement of undisputed material facts. Therefore, any fact in the Defendants' statement of undisputed material facts that Plaintiff has not properly challenged is deemed admitted to the extent it is supported by some evidence.

This race discrimination lawsuit arises from Plaintiff's employment as a police officer with the MPD. Plaintiff, a Caucasian male, was hired as a police officer by the MPD in January 2011. In July 2012, Plaintiff worked on a shift that

was under the supervision of Sgt. Daniel Lindsay ("Lindsay"). On July 9, 2012, an African-American woman named Hope Allen ("Allen") began working as a police officer with the MPD. Allen was placed on Lindsay's shift. Corporal Rocky Hancock ("Hancock") was designated as Allen's field training officer ("FTO") and tasked with familiarizing her with the layout of the City of Moultrie and the Department's policies and procedures. As Allen's FTO, Hancock was her supervisor, and both he and Lindsay are Caucasian. (Defendants' Statement of Undisputed Material Facts ("DSMF"), Doc. 16, ¶¶1-2, 5-11).

In late July 2012, Allen provided a letter to Frank Lang ("Chief Lang"), the chief of the MPD, in which she complained of comments and behavior by MPD officers that she considered racially offensive. According to the letter, Hancock had shown Allen racial videos and exchanged racial comments with Shunell Borders ("Borders"), another African-American female police officer with the MPD. The letter also claimed that Hancock had shown Allen a photograph of Borders holding a Cracker Jack box whose lettering had been altered to read "Nigger Jacks." Allen additionally complained that Lindsay had made comments to her about her race. (Id. at ¶¶12-13).

Around the same time that Allen submitted the letter, she also delivered a memorandum to Chief Lang describing an incident she had had with Plaintiff. According to the memorandum, on July 15, 2012, she had been using the

4

computer in the MPD's briefing room but then left to go to the sergeant's office. When she returned to the briefing room, Plaintiff was sitting at the computer. He asked if Allen wanted to use the computer again, but she declined. Plaintiff then said, "'cause if you did I was gone call you a bitch." Allen replied, "[N]o you weren't going to call me a bitch, I was gone push your ass out that chair." As detailed in the memorandum, Plaintiff and Allen then repeated the "bitch" and "ass" comments for good measure. (Id. at ¶¶14-15).

After getting Allen's letter and memorandum, Chief Lang formed a panel of city employees to investigate her claims. Seth Walters, a commander with the MPD, was among those who served on the panel. During the interview with the panel on July 30, 2012, Plaintiff said that he had joked with Allen since she had begun working with the MPD. He admitted to being in the briefing room with Allen on July 15, and he did not deny calling her a "bitch." Plaintiff told the panel that he simply did not recall whether or not he had done so. After appearing before the panel, Plaintiff submitted a written statement to Commander Walters in which he reiterated that, although he could not deny making the comment to Allen, he did not remember whether he had. On August 1, Plaintiff submitted a second statement to Walters which related that Chris Tucker ("Tucker"), a MPD officer, may have been in the briefing room when Plaintiff supposedly called Allen a "bitch." (Id. at ¶¶16-25).

Chief Lang decided to place Plaintiff on decision-making leave ("DML") for one day, along with Lindsay, Hancock, and Borders, and Chief Lang informed Plaintiff of this decision in a letter on August 10, 2012. Chief Lang had watched video recordings of the interviews conducted by the investigative panel, and he concluded that Allen was being truthful in claiming that Plaintiff had called her a "bitch." In the DML letter to Plaintiff, Chief Lang suspended him for one day to afford an opportunity to decide whether he wished to continue working in the MPD. If Plaintiff wished to stay in the MPD, he would have to provide a plan of action for how he could correct the type of behavior reported by Allen. Plaintiff evidently satisfied Chief Lang's conditions because he continued working for several months. (Id. at ¶¶26-27, 47-49; Affidavit of Frank Lang, Senior, Doc. 18, ¶¶25-29; Deposition of Plaintiff, Doc. 20, pp. 27, 69-71, 74-75).

At some point after being placed on DML, Plaintiff had a conversation with Tucker and learned that the other officer had indeed been in the briefing room on July 15 during the incident with Allen. Tucker said that he had not overheard Plaintiff call Allen a "bitch." At Plaintiff's request, Tucker prepared a written statement summarizing his memory of what had occurred in the July 15 incident, and Plaintiff placed the statement in a personal file. He never gave Tucker's statement to a superior officer in the MPD. (Id. at 66-69; DSMF, ¶¶28-31).

Plaintiff's lawsuit alleges that by placing him on DML the MPD has treated him differently than similarly-situated African Americans, but he does not know of any African-American officers who have been accused of calling someone a "bitch" or using similarly inappropriate language. (Id. at ¶¶36-38; Plaintiff Depo., pp. 82-85). Departmental policy requires MPD officers who enter a romantic relationship with another officer to disclose this to the Department's administration, but the undisputed record does not show any non-Caucasian officers who violated this policy. LaToya Bell ("Bell") and Elvin Kerr ("Kerr") are African-American officers in the Department. After they began working in the MPD, Chief Lang learned of a photograph of them which indicated they might be in a romantic relationship. Because Bell and Kerr had not disclosed any such relationship, the nature of their relationship was investigated. The investigation uncovered that the officers were nothing more than friends, and neither one was disciplined.[1] (DSMF, ¶¶39-46).

Even though Plaintiff voluntarily resigned from the MPD in November 2012 and took a position with the Colquitt County Sheriff's Office that paid a higher hourly wage than he had earned with the Department, he filed this lawsuit against Defendants on March 12, 2013. (Plaintiff Depo., pp. 23-24, 27, 75-79;

---

[1] Plaintiff, in his deposition, testified that Kerr was Bell's FTO, that they had engaged in a sexual relationship, and that Kerr had impregnated Bell. (Plaintiff Depo., pp. 83-84). However, Plaintiff has conceded Defendants' depiction of Bell and Kerr's relationship and the results of MPD's investigation because he did not contest their statement of undisputed material facts as required by Local Rule 56.

Complaint, Doc. 1, ¶¶5, 27). His Complaint alleges that Defendants have violated Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981(a). (Id. at ¶5). Broadly construed, the Complaint claims that Plaintiff has suffered racial discrimination in the form of 1) disparate treatment based on the assignment to DML; 2) a hostile work environment; and 3) retaliation. (Id.; Plaintiff Depo., pp. 82-85; Plaintiff's Brief in Support of his Response to Defendants' Motion for Summary Judgment, Doc. 22, p. 4).

### III. Legal Analysis

The motion for summary judgment is granted because the undisputed material facts show that Defendants are entitled to judgment as a matter of law.

#### A. Claims against the Moultrie Police Department

Because Georgia law does not recognize the MPD as an entity capable of being sued, all of the claims against it are dismissed. *See* Smith v. City of Unadilla, 510 F. Supp. 2d 1335, 1342 (M.D. Ga. 2007) (citing Dean v. Barber, 951 F.2d 1210, 1214 (11th Cir. 1992) and Lovelace v. Dekalb Cent. Prob., 144 F. App'x 793, 795 (11th Cir. 2005)).

#### B. Claims against the City of Moultrie

Plaintiff's claims against the City of Moultrie are also dismissed. Plaintiff bases his claims on Title VII and § 1981. As amended, Title VII makes it illegal for employers "to discriminate against any individual with respect to his

compensation, terms, conditions, or privileges of employment, because of such individual's race…." 42 U.S.C. § 2000e-2(a). Section 1981 similarly prohibits racial discrimination. 42 U.S.C. § 1981(a). Title VII and § 1981 claims are subject to the same analysis if they are based on the same set of facts. Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998). Although the Complaint only generally alleges unlawful "discrimination and retaliation," Defendants reasonably inferred the discrimination claim was for disparate treatment and focused their summary judgment motion on that claim. In responding to the summary judgment motion, plaintiff crafted his argument, to the extent one was made at all, in terms of a hostile work environment claim, which appears to be the first time this specific allegation has been made. The Court will assume, in an abundance of caution, that claims of disparate treatment, a hostile work environment, and retaliation have been adequately pled.

### 1. Disparate Treatment

Plaintiff has not established a claim of discrimination in the form of disparate treatment. Among other things, such a claim requires Plaintiff to show that Defendants "treated similarly situated employees outside his [racial] classification more favorably." Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997). There is no evidence that non-Caucasian police officers engaged in behavior comparable to Plaintiff's conduct, and there is certainly no evidence that

the MPD was more tolerant of non-Caucasian officers. The disparate treatment claim is dismissed.

### 2.    Hostile Work Environment

Summary judgment is also granted for the hostile work environment claim. To support such a claim Plaintiff must, among other things, provide evidence that he was subjected to unwelcome harassment based on his race and that the harassment was "severe or pervasive enough to alter the terms and conditions of employment and create a hostile … working environment." Edwards v. Prime, Inc., 602 F.3d 1276, 1300 (11th Cir. 2010). The record does not indicate that Plaintiff experienced harassment at the MPD because of his race or that he was working in a racially hostile environment.

### 3.    Retaliation

The retaliation claim is also dismissed. As with the hostile work environment claim, Defendants' motion for summary judgment does not expressly refer to retaliation, even though they clearly move to dismiss all of Plaintiff's claims. Nothing in the record supports a retaliation claim under Title VII. There is no evidence that Plaintiff reported or opposed an employment practice by Defendants that he reasonably believed violated Title VII, nor is there any evidence they retaliated against him for engaging in activity protected by that

statute. *See* <u>Dixon v. The Hallmark Cos.</u>, 627 F.3d 849, 856-57 (11th Cir. 2010) (providing the elements of a Title VII retaliation claim).

**IV.   Conclusion**

For the reasons provided above, the Motion for Summary Judgment (Doc. 15) by the City of Moultrie and the MPD is granted, and this case is dismissed.

**SO ORDERED**, this the 11th day of August, 2014.

*s/ Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

scr